IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-792-D

| | |
|---|---|
| JACQUELINE E. ALSTON, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, DE-21] pursuant to Fed. R. Civ. P. 12(c). Claimant Jacqueline E. Alston ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) challenging the final decision of the Commissioner that Claimant was no longer eligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

In a determination dated November 22, 2005, Claimant was found disabled as of June 3, 2005.[1] (R. 72–73). On January 18, 2012, the Commissioner determined that Claimant was no longer

---

[1] This is the comparison point decision ("CPD"). (R. 19); *see* 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1)(vii).

disabled as of January 9, 2012. (R. 74–75). A Disability Hearing Officer affirmed the finding that Claimant was no longer disabled in a decision issued on July 15, 2013. (R. 115–26). A hearing before the Administrative Law Judge ("ALJ") was held on August 8, 2014, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 34–71). On April 7, 2015, the ALJ issued a decision determining that Claimant's disability ended on January 9, 2012. (R. 14–33). On July 7, 2016, the Appeals Council denied Claimant's request for review. (R. 1–5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The initial disability determination, where the issue is whether a claimant is disabled and entitled to Social Security benefits in the first place, is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3),

3

416.920a(e)(3).

Once a claimant has been found disabled under the Act, a presumption of continuing disability arises. *See Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted). The Commissioner may not terminate benefits unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairments such that the claimant is able to engage in substantial gainful activity. *See* 42 U.S.C. §§ 1382c(a)(4)(A), 423(f); 20 C.F.R. §§ 404.1594, 416.994. To determine whether a claimant continues to be disabled, an ALJ follows an eight-step sequential evaluation process for DIB claims and a seven-step process for SSI claims. The evaluation processes are essentially the same with the exception of the first step regarding substantial gainful activity, which applies only to DIB claims. The steps are as follows:

> (1) Is the claimant presently engaged in substantial gainful activity? If so, and any applicable trial work period has been completed, the claimant's disability ends. If not, proceed to step two.
>
> (2) Does the claimant have an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant's disability continues. If not, proceed to step three.
>
> (3) Has there been medical improvement as shown by a decrease in the medical severity of the impairment(s) present at the time of the CPD? If so, proceed to step four. If not, proceed to step five.
>
> (4) Was any medical improvement related to the ability to work (i.e., has there been an increase in the claimant's [RFC])? If so, proceed to step six. If not, proceed to step five.
>
> (5) Is there an exception to medical improvement? If not, the claimant's disability continues. If an exception from the first group of exceptions to medical improvement applies (i.e., substantial evidence shows that the claimant has benefitted from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" if either is "related to [the] ability to work"), *see* 20 C.F.R. §§ 404.1594(d) & 416.994(b)(3), proceed to step six. If an exception from the second group applies (i.e., disability determination was fraudulently obtained, claimant was uncooperative,

unable to be found, or failed to follow prescribed treatment, *see* 20 C.F.R. §§ 404.1594(e) & 416.994(b)(4), the claimant's disability ends.

(6) Is the claimant's current combination of impairments severe? If so, proceed to step seven. If not, the claimant's disability ends.

(7) Does the claimant possess the [RFC] to perform claimant's past relevant work? If so, the claimant's disability ends. If not, proceed to step eight.

(8) Does the claimant's [RFC], when considered with the claimant's age, education, and work experience, allow the claimant to do other work? If so, the claimant's disability ends. If not, the claimant's disability continues.

*Sykes v. Colvin*, No. 5:15-CV-228-RN, 2016 WL 3129174, at *2–3 (E.D.N.C. June 2, 2016) (citing 20 C.F.R. §§ 404.1594(f), 416.994(b)(5)). In an action considering termination of benefits, the claimant still has the burden to prove disability, but the Commissioner has the burden of producing evidence to meet or rebut the presumption that the claimant continues to be disabled. *Id.* at *3 (citing *Bellamy*, 755 F.2d at 1381).

In this case, Claimant alleges the ALJ erred in the RFC determination, in evaluating the medical opinion evidence and Claimant's credibility, in relying on improper hypotheticals to the VE, and by failing to find Claimant's back pain was a severe impairment. Pl.'s Mem. [DE-19] at 5–18.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant was no longer disabled as of January 9, 2012. (R. 17). First, the ALJ determined that the CPD was the November 22, 2005 disability determination and at that time, Claimant had the following medically-determinable impairments: lung and breast cancer. (R. 19). At step one, the ALJ found Claimant had not engaged in substantial gainful activity as of January 9, 2012, the date her disability ended.

5

*Id.* The ALJ next determined that Claimant's current medically-determinable impairments were residual discomfort from mastectomies, depressive disorder, and anxiety disorder. *Id.* Despite Claimant's allegations of back pain, because the medical evidence lacked a formal diagnosis and physical exams were largely unremarkable, the ALJ found that Claimant's alleged back pain was not supported by a medically-determinable impairment. *Id.* However, at step two, the ALJ concluded that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19–21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living and moderate limitations in social functioning and concentration, persistence, and pace with no episodes of decompensation. (R. 20).

At step three, the ALJ determined that medical improvement had occurred as of January 9, 2012. (R. 21). At step four, the ALJ determined that medical improvement was related to the ability to work because as of January 9, 2012, Claimant's CPD impairments no longer met or medically equaled the same listing that was equaled at the time of CPD. *Id.* The ALJ continued to step six and determined that Claimant's current impairments were severe. *Id.*

Prior to proceeding to step seven, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[2] with the following limitations: can perform simple, routine, and repetitive work tasks, meaning tasks which apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, with the ability to deal with problems

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

6

involving several concrete variables in or from standardized situations; can frequently interact with coworkers and supervisors; and can occasionally interact with the general public. (R. 22). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 22–24). At step seven, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a machine presser. (R. 25–26).

Alternatively, at step eight, the ALJ found that upon considering Claimant's age, education, work experience and RFC, Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 26–27).

## V. DISCUSSION

### A. Claimant's Allegations of Back Pain

Claimant contends the ALJ erred by failing to find that Claimant's back pain was a severe impairment. Pl.'s Mem. [DE-19] at 12–14. In response, the Commissioner argues that substantial evidence supports the ALJ's consideration of Claimant's allegations of back pain. Def.'s Mem. [DE-22] at 10–11.

During the sequential evaluation process, the ALJ must consider the severity of a claimant's impairments. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v). "To be found disabled, an individual must have a medically determinable 'severe' physical or mental impairment or combination of impairments that meets the duration requirement." S.S.R. 96-3p, 1996 WL 374181, at *1 (July 2, 1996). The duration requirement provides that unless a claimant's "impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909. An impairment is considered "severe" when it "significantly limits an individual's physical or mental abilities to do basic work activities; an

7

impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." S.S.R. 96-3p, 1996 WL 374181, at *1; *see also* 20 C.F.R. §§ 404.1522, 416.922 (defining non-severe impairments and providing examples of basic work activities).

The burden of proof and production during the second step rests on the claimant. *Pass*, 65 F.3d at 1203. "As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process[.]" *Pittman v. Astrue*, No. 5:08-CV-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008) (citation omitted). Thus, any error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps).

Claimant cites to certain medical record evidence which reflects Claimant's complaints of back pain to her medical providers and documents objective findings regarding her back in support of her argument that her back pain should have been determined to be a severe impairment by the ALJ. Pl.'s Mem. [DE-19] at 12–14 (citing R. 313–15, 318–19, 323, 327, 357–58, 547–64, 607, 611–36). The ALJ stated as follows regarding Claimant's back pain while considering Claimant's current impairments:

> [t]here is no medical evidence of record to support the claimant's allegations of back pain . . . . The claimant testified to chronic back pain with an inability to perform prolonged sitting and standing. However, the medical evidence lacks a formal

8

diagnosis and she demonstrated full range of motion and strength in all extremities as of August 2012 (Ex. B13F). She also exhibited no tenderness in her back as of November 2012 (Ex. B11F). In September 2014, the claimant complained of back pain; however, her gait and range of motion in her legs were normal. In addition, she only had mild tenderness in her back (Ex. B21F). Accordingly, the undersigned finds that the claimant's alleged back pain is not supported by any medically-determinable impairment.

(R. 19). However, the ALJ considered Claimant's allegations of back pain in considering the medical opinion evidence and formulating the RFC. *See* (R. 22–25). Thus, to the extent the ALJ erred in failing to find that Claimant's back pain was a severe impairment, any error is harmless because the ALJ continued to subsequent steps of the analysis and considered Claimant's back pain in formulating the RFC. *See Jones*, 2009 WL 455414, at *2. Accordingly, this argument provides no basis for remand.

## B. The ALJ's RFC Determination

Claimant argues that the ALJ erred in the RFC determination by improperly weighing the medical opinion evidence and Claimant's credibility. Pl.'s Mem. [DE-19] at 7–10, 14–18. The Commissioner argues that substantial evidence supports the ALJ's RFC determination. Def.'s Mem. [DE-22] at 6–13.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of

limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

### 1. Medical Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered

controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[3] An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

### *i.* *Dr. Batts-Murray's Opinion*

Claimant argues that the ALJ erred by failing to appropriately consider the opinion of Dr. Batts-Murray, Claimant's treating physician. Pl.'s Mem. [DE-19] at 7–10. The Commissioner contends that substantial evidence supports the ALJ's consideration of Dr. Batts-Murray's opinion. Def.'s Mem. [DE-22] at 6–7.

On September 11, 2014, Dr. Batts-Murray wrote a letter outlining her treatment of Claimant. (R. 607–08).[4] The ALJ accurately summarized Dr. Batts-Murray's letter as follows:

---

[3] Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

[4] An identical copy of the September 11, 2014 letter appears at (R. 609–10).

11

In September 2014, Dr. Doris Batts-Murray, completed a Medical Source Statement advising that she had treated the claimant since February 2012 for hypertension (which was well controlled), chronic low back pain, generalized body pain, anxiety and depression. Dr. Batts-Murray noted that she had tried to refer the claimant out several times for her psychiatric impairments but transportation had been an issue. Dr. Batts-Murray opined that the claimant was unable to maintain employment due to chronic pain and her mental health issues (Ex. B19F). However, clinical notes from Dr. Batts-Murray in September 2014 show the claimant denied depressive or anxiety symptoms. The claimant complained of back pain and wheezing. Her physical examination evidenced she was in no acute distress. She had wheezes on forced expiration but no distressed breath sounds. Her gait and range of motion in her legs were normal. She only had mild tenderness in her back. It was noted that she was "less moody" and her judgment was intact (Ex. B21F).

(R. 24). The ALJ then stated the weight afforded to Dr. Batts-Murray's opinion:

With respect to Dr. Batts-Murray's opinion, the undersigned notes this opinion is not a medical opinion, but rather an administrative finding dispositive of a case, which requires familiarity with the Regulations and legal standards set forth therein (Ex. B19F). Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (20 CFR 404.1527(d)(2) and 416.927(d)(2); SSR 96-5p). As this opinion is not supported by the record as a whole, the undersigned declines to afford it much weight. Specifically, Dr. Batts-Murray has not ordered objective testing to see if she has a valid orthopedic problem and treatment notes do not document much in way of symptoms.

(R. 25).

In support of her argument, Claimant points to the length of her treatment relationship with Dr. Batts-Murray, argues that the ALJ placed too much emphasis on the issue of back pain when Dr. Batts-Murray treated Claimant for multiple medical impairments, and asserts that the ALJ erred in determining that the opinion was on a matter reserved to the commissioner, as it also discussed treatment, diagnoses, medications, and observations during clinic visits. Pl.'s Mem. [DE-19] at 7–10. Claimant's arguments are without merit.

12

As an initial matter, the ALJ is correct that Dr. Batts-Murray's statement about Claimant being unable to work due to her health problems is an opinion on an issue reserved to the Commissioner and therefore not entitled to special weight. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (explaining that opinions on issues reserved to the Commissioner, such as whether a claimant is disabled, are not entitled to special significance). However, the ALJ also discounted Dr. Batts-Murray's opinion because it was not supported by the record as a whole, specifically citing to the lack of objective testing related to Claimant's orthopedic problems and the lack of severe symptoms documented in the treatment notes. These are appropriate considerations under the regulations and agency rulings. *See id.* §§ 404.1527(c), 416.927(c) (listing supportability and consistency in a non-exhaustive list of facts to consider in assessing medical opinions); *see also Dunn v. Colvin*, 607 F. App'x 264, 268 (4th Cir. 2015) ("[T]he more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given."). "An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, see 20 C.F.R. § 404.1527(d) (1998)." *Dunn*, 607 F. App'x at 267. Accordingly, the ALJ's analysis of Dr. Batts-Murray's opinion provides no basis for remand.

### ii. *Dr. Ricci's Opinion*

Claimant argues that the ALJ erred in considering the opinion of Dr. Ricci, a psychologist who performed a consultative examination of Claimant in January 2013. Pl.'s Mem. [DE-19] at 17–18. The Commissioner counters that substantial evidence supports the ALJ's consideration of

13

Dr. Ricci's opinion. Def.'s Mem. [DE-22] at 8–9.

The ALJ accurately summarized Dr. Ricci's opinion as follows:

> During the interview, she advised that she lived alone and denied any previous psychiatric hospitalizations. Her symptoms included insomnia, poor appetite, sad mood, crying spells, loss of interest, poor energy, social withdrawal, and panic attacks. She denied major difficulty maintaining concentration. Her daily activities consisted of bathing, dressing, and grooming. She could prepare meals but could not stand long. She did not socialize with friends or family. Results of her mental status examination revealed that she was cooperative, she was adequately groomed, and she had fluent speech. Her affect was anxious and she was tearful. The claimant was able to maintain concentration to perform simple calculations but her memory was mildly impaired due to anxiety. Dr. Ricci diagnosed the claimant with generalized anxiety disorder, dysthymic disorder and panic disorder. Dr. Ricci opined that the claimant could maintain basic attention and concentration but would have some trouble learning even simple tasks without training. She "may have difficulty maintaining a regular schedule, learning complex tasks without training and supervision." However, she could make appropriate decisions but "appears" to have significant difficulties relating adequately with others and dealing with stress (Ex. B14F).

(R. 23 (citing R. 570–74)). The ALJ went on to state the weight afforded to Dr. Ricci's opinion:

> [s]ome weight is assigned to the findings of Dr. Ricci because they are largely supported by her presentation during his evaluation, which was anxious but cooperative. However, his note that she might have significant difficulties relating to others is assigned less weight as she did not demonstrate major interpersonal problems during her various appointments or at the hearing in this matter (Ex. B14F).

(R. 25).

Claimant argues that Dr. Ricci's opinion should be given significant weight because it was based on a comprehensive evaluation and not just a review of medical records. Pl.'s Mem. [DE-19] at 18. However, the ALJ did afford some weight to parts of Dr. Ricci's opinion, as justified by the fact that many findings were supported by the evaluation itself. (R. 25). Moreover, the ALJ discounted part of Dr. Ricci's opinion due to its inconsistency with the record, which is an appropriate consideration under the regulations. *See* 20 C.F.R §§ 404.1527(c), 416.927(c). The

14

court may not re-weigh the evidence and substitute its own conclusions for those of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, where the ALJ considered the opinion pursuant to the factors listed in the regulations, substantial evidence supports the ALJ's consideration of Dr. Ricci's opinion and it provides no basis for remand.

## 2. Credibility

Claimant argues that the ALJ erred in the credibility analysis, specifically with respect to Claimant's chronic pain, breathing problems, depression, anxiety, ability to concentrate, and work history. Pl.'s Mem. [DE-19] at 14–18. The Commissioner counters that substantial evidence supports the ALJ's credibility determination. Def.'s Mem. [DE-22] at 11–13. The undersigned agrees that the ALJ did not properly explain why she discounted Claimant's complaints of difficulty breathing.

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2

(July 2, 1996);[5] *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564–65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595–96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011) (concluding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (Apr. 26, 2011).

As to Claimant's credibility, the ALJ stated the following:

[t]he above-summarized evidence demonstrates that the residual discomfort from mastectomies, depressive disorder, and anxiety disorder do provide for limitations in her abilities as evidenced by the medical evidence of record and the testimony at the hearing. However, the record also shows that the claimant's condition is not totally debilitating. The objective medical evidence generally supports her residual functional capacity. The claimant reported diffuse bodily pain following her

---

[5] Ruling 96-7p was superceded, effective March 28, 2016, and therefore still applies to this claim. 81 Fed. Reg. 15776-01 (Mar. 24, 2016).

mastectomies; however, none of her physical examinations showed significant loss of strength or range of motion in her upper extremities. She also consistently demonstrated a normal gait. Her anxiety and depression is documented in the record, requiring psychotropic medications. Yet, she did not require any in-patient psychological treatments and her mood improved by her most recent evaluation. Additionally, the claimant lived alone and was independent in all of her daily tasks. The claimant's treatment for her conditions have shown only mild restrictions with few if any recommendations for more aggressive treatment, following her recovery from cancer treatment, and her allegations of disability are not consistent with the minimal objective findings. However, recognizing that the claimant does have limitations because of her conditions, the undersigned has reduced her residual functional capacity to medium work with the additional limitations noted above.

(R. 24).

At the hearing, the ALJ asked how Claimant's daily activities were affected by her health conditions, and Claimant responded that she has trouble breathing. Specifically, Claimant testified that

> [w]ith the lung cancer, they cut off the upper half of my right lung which is pretty much about like half of the lung and ever since then I get so short-winded and I can't breathe. I mean, just like with the dishes and stuff, trying to wash some dishes and stuff, all of a sudden I'm like gasping for air so bad because it's like so bad I'm gasping like I'm just going to stop breathing right then.

(R. 54). Claimant also testified that she uses a nebulizer and asthma pumps, and uses an inhaler two to three times a day, although she is only supposed to use the inhaler twice per day. (R. 55).

The ALJ did not expressly state why she found not fully credible Claimant's testimony regarding the severity of her breathing problems. Indeed, Claimant had previously been found disabled based on her lung cancer (R. 19), and she testified that she lost a portion of her right lung during the cancer treatment (R. 54). In discussing the medical evidence, the ALJ noted that a December 2011 CT scan revealed no evidence of neoplastic disease in Claimant's lungs, an August 2012 examination revealed normal respiratory findings, in September 2014 Claimant complained

17

of wheezing and had wheezes on forced expiration but no distressed breath sounds. (R. 23–24) (citations omitted). This cursory discussion does not address Claimant's allegations of becoming short-winded during activity, and therefore an "accurate and logical bridge from the evidence to [the ALJ's conclusion" is lacking. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see also Mascio*, 780 F.3d at 640 (finding the ALJ's lack of explanation as to why he decided which of the claimant's statements to believe and which to discredit required remand). It is not the court's role to speculate as to the reasons the ALJ may have discredited these allegations, as it would require providing support for the ALJ's decision not supplied by the ALJ herself in the first instance. *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. Dec. 17, 2015) (per curiam) ("circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or hypothesize the ALJ's justifications that would perhaps find support in the record."). Accordingly, remand is warranted for the ALJ to explain why she did not credit Claimant's allegations of breathing problems.

Claimant also argues that the ALJ erred in considering her chronic pain, depression, anxiety, concentration problems, and work history while performing the credibility analysis. As it is recommended that this case be remanded based on the ALJ's flawed credibility analysis, the ALJ should reconsider, as necessary, Claimant's allegations in these areas on remand. Additionally, Claimant argues that the ALJ erred in the VE hypotheticals, Pl.'s Mem. [DE-19] at 10–12, but this issue may also be impacted by the ALJ's reconsideration of Claimant's credibility, so the ALJ should reconsider, as necessary, the hypotheticals posed to the VE on remand.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment

on the Pleadings [DE-19] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-21] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 14, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **seven (7) days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Submitted, this the 31st day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge